**STATE ex SWEENEY v MICHELL et**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 13558.  Decided July 17, 1933

S. V. McMahon, Cleveland, F. W. Zimmerman, Cleveland, J. P. Mooney, Cleveland, Jos. B. Keenan, Cleveland, and Herbert Cuyler, Cleveland, for relator.

W. George Kerr, Cleveland, Wm. C. Dixon, Cleveland, and Alfred Clum, Cleveland, for respondents.

**OPINION**

By LIEGHLEY, PJ.

The charter provides that referendum petitions shall be filed with the Clerk of the Council within forty days after the enactment of the ordinance. Section 5 provides that the petition for a referendum shall be filed within thirty days with the executive authority of a municipality. These provisions, with others regulating the submission, disclose a clear conflict between the Charter and the Constitution, if §4 above comprehends the contract for furnishing product and service. That this conflict exists in this event is conceded by counsel.

It seems to be further conceded that a determination of the meaning that shall be given to the phrase found in §4 above "and may contract with others for any such product or service," read together with the phrase found in §5 above, "or to contract with any person or company therefor" will be decisive of the instant case. It seems to be conceded that if the language quoted comprehends the subject matter of the ordinance involved herein, then and in that

event the Constitution controls and the provisions of the Charter in relation thereto have no application.

First, it was strenuously contended by counsel for the relator that the enactment of this ordinance No. 99091 and the acceptance thereof by the Illuminating Company did not constitute a valid contract. It is our conclusion that it does. Said ordinance amounted to an offer when passed on February 27, 1933. The acceptance thereof by the Illuminating Company on March 30, 1933, resulted in a valid contract. A proposal by ordinance to buy the product and service at a given figure subject to express regulations and the written acceptance thereof by the utility company constitutes a valid, binding contract, subject however to existing law relating to submission to the electors by way of referendum. In the Steubenville case the situation was reversed. The public utility made the offer which was accepted by the city by ordinance, and the courts held this to be a binding contract.

Attention is called to the most recent decision of the Supreme Court in the case of **City of Akron v Public Utilities Commission, 126 Oh St 333,** which is reported in Ohio Law Bulletin & Reporter under date of May 8, 1933, the syllabus of which reads as follows:

"Where a city ordinance regularly passed fixes a rate whereby a particular public utility will be permitted to market its product to the city for a specified time, and the proffer contained in such ordinance is accepted, in writing, by such public utility, a contract is thereby made between the city and the public utility, and a contract rate is established which the Public Utilities Commission has no power to alter during the term of the contract. **(Link et v Public Utilities Commission, 102 Oh St 336,** approved and followed.)"

A careful reading of the sections of **Article XVIII** will render significant the fact that among all the activities of a municipality such as water, sewers, street improvements, grade crossing eliminations, etc., none receive specific mention and attention except public utilities.

The relator seems to agree that if the ordinance relates to the acquisition, construction, ownership or leasing of a public utility, then and in that event §§4 **and 5 of the Constitution** would control and the provisions of the Chapter be inapplicable. All agree that if the Constitution speaks

specifically on a subject, statutes and home rule Charters are superseded by the higher law.

What was the ultimate object and purpose of the framers of these Sections? It does not seem to us that the paramount purpose was the ownership of a public utility but rather the product and service thereof to the end that the needs and comforts of the inhabitants might be met. The product and service was the ultimate objective, and dealings therein was the thing sought to be safeguarded. Any dealings therein or in respect thereto, whether through municipal ownership of the utility or through contract with others for its product and service was specifically reserved by the language used in these Sections. There was no more reason for safeguarding the construction of a public utility than a garbage reduction plant or kindred municipal activities, if product and service was not the prime consideration.

The relator claims that the phrases above quoted mean the same as if the word "there for" was translated to read, "for the acquisition, construction or leasing of a public utility." Such meaning would render the phrase useless and be a mere repetition of a right or power theretofore granted by implication. The right to acquire or construct carries with it the necessary and indispensible right to contract,—the authority to make all contracts required to accomplish the undertaking. Only by giving to the language that meaning contended for by the respondents, do you attribute any useful purpose in including these phrases in the Sections.

The Constitution, through these Sections, empowers each municipality to acquire, construct, own, lease and operate a public utility that its product and service may be available. Or, to contract with others for such product and service. However, if and when it undertakes to exercise this authority, it must be done only by ordinance and this ordinance shall not become effective for thirty days. And if a sufficient referendum petition be filed within thirty days, it shall not go into effect until duly submitted to a vote and approved by a majority. The submission shall be governed by all the provisions of §8. These sections are self-executing on authority of some holding herein cited. Section 4 contains the grant of power and §5 provides the only method and manner of exercising same. **State ex v Weiler, 101 Oh St 123-127.**

Considering as we do that it was the dealings with the public utility with a view to acquiring product and service that was the outstanding paramount objective, we believe that the phrases above quoted also relate to contracts covering the marketing of product and service.

It seems to us further that this question has been judicially determined. The fourth paragraph of the syllabus in the case of **Power Co. v Steubenville, 99 Oh St 421** reads as follows:

"A contract entered into between a public utility and a municipality of this state, whereby the public utility agrees to supply its product or service to the municipality or its inhabitants for a period of ten years, at a rate, price, charge, toll or rental specified in such contract, is expressly authorized by §4, **Article XVIII of the Constitution of Ohio** and is valid and binding upon the parties thereto unless disapproved by a majority of the electors voting thereon, at a referendum election held under the provisions of §5, **Article XVIII of the Constitution of this state.**"

The syllabus is the law of the case. The principle announced has not been modified or reversed to our knowledge. Counsel for relator claims this is obiter with which we do not agree. The court was considering the validity of a contract entered into between the city and the power company, wherein the city made the offer by ordinance and the same was accepted by the power company, and decision of the question contained in the syllabus was clearly incidental to a decision of the validity of the contracts involved. The discussion appears on page 428 of the opinion.

In the case of **Link v Public Utilities Commission, 102 Oh St 337,** the court decided that the Public Utilities Commission had no jurisdiction to review a valid contract made by and between a municipality and a utility company for its product and services and that §4, Article XVIII is self-executing and that no action of the legislature is essential to authorize such a contract, thereby inferentially holding that the constitutional provisions control.

To further support our opinion that the law on this subject is settled in this state to the effect that the language of the Constitution contained in §§4 and 5 of Article **XVIII,** clearly include contracts between a municipality and a utility company for its product and service and in support of this opinion we cite the following authorities. In some of them the specific holding is contained in the opinion, but they disclose

a consistent adherence to the principle announced in the syllabus of the Steubenville case:

Dravo-Doyle v Village of Orrville, 93 Oh St 236, 243.

State ex v Cincinnati Street Railway Co., 97 Oh St 283, 297.

Link et v Public Utilities Commission, 102 Oh St 336, 338.

State ex v Abele, 119 Oh St 210.

Columbus v Public Utilities Commission, 103 Oh St 79, 124.

Opposed to the foregoing authorities is a statement in the opinion in the case of James v Ketterer, 125 Oh St 165, in the following words:

"The charter being silent, those interested certainly had the right to proceed under the general law of the state that saved to the people their right of initiative and referendum. And they were not driven to §§4 and 5 of Article XVIII of the Constitution as those provisions relate solely to the acquirement of a public utility by the municipality, State ex Diehl v Abele, 119 Oh St 210, 162 NE 807."

The court had under consideration the Charter of the City of Columbus, which provided for referendum on ordinances but did not provide for submission of a resolution. It was decided that the first measure consisting of the resolution of necessity taken in respect to a proposed street improvement was not covered by the Charter of that city. In connection with the decision of this question the foregoing language was incorporated in the opinion, and seems to be opposed to the repeated pronouncements of the court on the question at issue here. We do not regard this language used in this opinion as amounting to a modification or reversal of the syllabus of the Steubenville case and subsequent authorities cited.

The authorities settle the question before us in our opinion. The meaning attributed to the phrases from §§4 and 5, the principal issue before us, by the respondents seems to us the correct one. It seems to us the only reasonable and logical interpretation. Any other would render the use of the language useless and be merely a repetition of the grant of power. For the foregoing reasons, we hold that the relator is not entitled to the relief prayed for, and the writ of mandamus is denied.

McGILL, J, concurs in judgment.
LEVINE, J, dissents.

LEVINE, J, dissenting:

I am of the opinion that in matters of legislation purely local in their character, a Charter city such as the City of Cleveland is, may by Charter provide for its own method of procedure in order to submit such legislation to a vote of the people, either through the channel of initiative or referendum; that the Charter provisions govern, and are exclusive in the matter now before us.